IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ZAMBELLI FIREWORKS MANUFACTURING CO., INC. doing business as ZAMBELLI FIREWORKS INTERNATIONALE, | ) ) ) ) | |
|---|---|---|
| | ) | 2:08-cv-415 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MATTHEW WOOD, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Now pending before the Court are cross-motions for summary judgment: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REQUESTING ATTORNEYS' FEES AND COSTS (Document No. 76) filed by Zambelli Fireworks Manufacturing Co., Inc. ("Zambelli"); and DEFENDANT MATTHEW WOOD'S MOTION FOR SUMMARY JUDGMENT (Document No. 81). The motions have been thoroughly briefed. The parties have developed their positions regarding the "Concise Statements of Material Facts" and have submitted numerous exhibits for consideration by the Court. Accordingly, the motions are ripe for disposition.

Factual and Procedural Background

Zambelli filed this lawsuit in March 2008 against a former employee, Matthew Wood, and a competitor in the fireworks industry, Pyrotecnico F/X, LLC ("Pyrotecnico") to enforce the restrictive covenants in an Employment Agreement executed between Zambelli and Wood. After a period of discovery, the Court conducted an evidentiary hearing in August 2008 on Plaintiff's motion for a preliminary injunction. The parties filed post-hearing briefs and proposed findings of fact and conclusions of law. On January 21, 2009, the Court issued Findings of Fact and

Conclusions of Law in accordance with Fed. R. Civ. P. 52 and 65, which granted Zambelli's motion for a preliminary injunction in part.

Among other factual determinations, the Court found that the fireworks industry is competitive and that both Zambelli and Pyrotecnico have lured customers from one another in the course of competition, and both have lost customers to other competitors. The operative employment agreement was executed on June 2, 2005 (the "2005 Employment Agreement"). The 2005 Employment Agreement contained, *inter alia*, the following provisions:

(a) A non-competition provision purporting to prohibit Wood from engaging "in any manner" in the pyrotechnic business within the Continental United States or taking a position of employment with a company engaged in the pyrotechnic business for two years after leaving the company.

(b) A two-year non-solicitation provision.

(c) A confidentiality provision preventing disclosure of trade secrets and materials.

(d) A provision stating that if a Court should determine that the terms of the non-compete agreement are unreasonable, the remedy shall be modification of the Agreement to less restrictive terms rather than voiding the Agreement.

(e) An attorneys fees provision which states: "If it is necessary for Zambelli to file legal proceedings to enforce the terms of this Agreement and Zambelli prevails, Matthew Wood agrees to pay all legal fees, court costs and expenses incurred by Zambelli in such proceedings."

(f) A provision stating that Pennsylvania law shall apply.

The Court determined that the 2005 Employment Agreement between Zambelli and Matthew Wood is enforceable and that Wood had breached the terms of the Employment Agreement by accepting an employment offer at Pyrotecnico. On the other hand, the Court explained that Wood is entitled to earn a livelihood in the pyrotechnic field and held that he was entitled to resign from his job at Zambelli and to accept employment at Pyrotecnico. The Court

concluded that the non-compete provisions were overbroad, and commented: "The mere fact that Wood could work on shows for Pyrotecnico customers does not directly harm Zambelli."

As to the other claims asserted by Zambelli, the Court stated: "Based on the testimony and evidence thus far presented, the Court observes that Plaintiff is unlikely to succeed on the merits of its claims for breach of fiduciary duty of loyalty, misappropriation of trade secrets, interference with contractual relations or prospective economic advantages, unfair competition and civil conspiracy as there is a dearth of evidence to support any breach of those duties by either Defendant." Conclusion of Law 21. The Court found that Wood had not disclosed any Zambelli trade secrets or proprietary information to Pyrotecnico. The Court further found that during his employment with Pyrotecnico, Wood had done only internal work, had not had client/customer contact, and had actively attempted to avoid conduct which may have been in breach of his employment agreement with Zambelli. Accordingly, the Court modified (or "blue penciled") the restrictive covenants and granted Zambelli's motion for a preliminary injunction in part. Specifically, the Court modified the restrictive covenants as follows:

**NON COMPETITION**

**7. During the term of this Agreement and for a period of two years following termination of this Agreement (FEBRUARY 22, 2008), for any cause whatsoever, Matthew Wood shall not directly or indirectly, either as an employee, owner, or otherwise, anywhere within the geographical area of Continental United States engage in any manner in the DESIGN AND/OR CHOREOGRAPHY OF AERIAL pyrotechnic ~~business~~ DISPLAYS and Matthew Wood AND ANY SUCCESSOR PYROTECHNIC EMPLOYER ~~shall not take~~**

**~~any position of employment or ownership with any company or companies engaged in the sale or production of pyrotechnic displays if that company does any business in the aforementioned geographical area.  Matthew Wood~~ for two years following termination of this Agreement shall not contact or solicit business with or from any customer, customers, client, OR clients OF ZAMBELLI, ~~or any other person or entity~~ with whom ~~he~~ WOOD had business contact as an employee, agent or representative of Zambelli during his period of employment.  Nor shall Matthew Wood during two years following termination of this Agreement act in any manner either as an employee, owner, consultant, agent, principal, employer, partner, corporate officer, or in any other capacity in any manner INDIVIDUALLY OR PERSONALLY engage or participate in any ACTIVITY ~~business~~ that is in competition, in any manner with the business of Zambelli.  During the aforementioned two year period, Matthew Wood shall not directly or indirectly solicit or entice for employment any employee of Zambelli.  Matthew Wood acknowledges that each of the restrictions set forth in this section is a material condition of this Agreement to employee Matthew Wood, and further, that the parties believe such restrictions are reasonable in duration and scope and that a breach thereof will cause irreparable harm to Zambelli and therefore Zambelli will be entitled to temporary and permanent injunctive relief in addition to all other remedies entitled to at law or in equity.**

Wood and Pyrotecnico appealed.  On January 15, 2010, the United States Court of Appeals for the Third Circuit issued a precedential opinion which dismissed Pyrotecnico from the case on jurisdictional grounds and affirmed the enforcement of the 2005 Employment

4

Agreement as "blue penciled" by this Court. The Court of Appeals remanded the case with instructions to impose a bond in connection with the previously issued preliminary injunction. The parties then engaged in additional discovery prior to filing the pending cross-motions for summary judgment.

Standard of Review

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

Legal Analysis

There are essentially two disputes between the parties remaining in this case. First, Wood contends that Zambelli has failed to prove that it suffered any damages attributable to his conduct, such that Zambelli cannot succeed under any of its legal theories. Second, the parties disagree as to whether the "attorney fees" provision in the 2005 Employment Agreement is enforceable under the facts and circumstances of this case. The Court will address these disputes seriatim.

### A.   Sufficiency of the Evidence Regarding Damages

Wood argues, in essence, that Zambelli has failed to produce evidence from which a reasonable jury could find that his alleged failure to abide by the restrictive covenants caused Zambelli to incur damages. Thus, Wood contends that he is entitled to summary judgment on all counts of the Complaint and that Zambelli is not entitled to any relief other than the preliminary injunction which had been previously granted. Zambelli contends that there are numerous questions of disputed fact regarding damages which prevent the entry of summary judgment. More particularly, Zambelli contends that its proof must necessarily be circumstantial and that the deposition testimony of CEO Douglas Taylor is sufficient to create factual disputes about Zambelli's damages.

The Court agrees with Wood. Zambelli has used an improper theory for attribution of its alleged damages. Moreover, most of Taylor's deposition testimony is inadmissible hearsay. Zambelli has relied on unsupported assertions, conclusory allegations, or mere suspicions, which the Supreme Court has repeatedly stated are insufficient to survive a summary judgment motion.

In alleging damages in this case, Zambelli has failed to distinguish damages attributable

6

to Wood's <u>resignation</u> and acceptance of employment at Pyrotecnico from those which were caused by Wood's alleged wrongful breach of the restrictive covenants deemed to be reasonable by the Court. Thus, Zambelli has claimed damages where "we could reasonably conclude that ***his departure*** hurt us." Taylor Deposition at 44 (emphasis added). *See also* Taylor Deposition at 70-71 (Zambelli is seeking damages relating to its investment to counteract Wood's departure); Zambelli's Response to Wood's Statement of Material Facts ¶ 13 ("Zambelli was also forced to incur significant cost and expense **in attempting to counteract the impact of Wood's departure**, including the cost and expense of injecting new salespeople into the market"); Zambelli's Response to Wood's Statement of Material Facts ¶ 14 ("Mr. Taylor explained that **the loss of Wood's ability**, knowledge and customer relationships resulted in Zambelli being less competitive in the marketplace"). Moreover, Taylor explained that some of Zambelli's efforts in the marketplace were "preemptive" and that he was not suggesting that there was evidence that Wood had contacted his former customers. Taylor Depostion at 71-72.

      Zambelli's theory is fatally flawed. Succinctly stated, Zambelli has no right to force Wood to remain employed by Zambelli for his entire career. Upon Wood's resignation, Zambelli certainly lost access to his unique abilities and was required to hire new people to replace him. Nevertheless, the Court had previously ruled that the 2005 Employment Agreement was overbroad and that Wood was entitled to resign and to accept employment with another fireworks company. The Court explained that Wood was entitled to earn a livelihood in the pyrotechnic field. The Court set forth certain limitations on the activities in which Wood could engage while at Pyrotecnico but specifically noted: "A broader restriction would not be reasonable." It necessarily follows that Zambelli has no right to recover damages that allegedly

7

flow simply from "Wood's departure" or from the "loss of Wood's ability."

Zambelli has also failed to produce sufficient evidence to defeat Wood's summary judgment motion. Zambelli premises its damages on the loss of four specific former customers. The Court will review the evidence briefly as to each of those customers.

        1.     Broken Sound Country Club

Taylor testified that Zambelli had been an exclusive supplier to Broken Sound Country Club in the past and that Wood was the primary customer contact. Sometime in 2008, Taylor was informed that Broken Sound would be using Pyrotecnico. Zambelli contends that Wood interfered with this client relationship because a manager at Broken Sound apparently contacted someone at Zambelli to ask how Pyrotecnico got his private cell phone number. Taylor Deposition at 13-20. Taylor was not a party to this conversation. Taylor Deposition at 18. Nor did Taylor conduct any followup investigation. Taylor Deposition at 20. Taylor merely makes the "assumption" that Wood provided the phone number to Pyrotecnico, and he "speculates" that such conduct contributed to the loss of the Broken Sound business. Taylor Deposition at 18-20. The Broken Sound employee did not assert that Wood had provided the phone number and Wood, in his deposition, denied having done so. There is no evidence that the decision of Broken Sound to hire Pyrotecnico had any connection to the obtaining of this alleged private cell phone number, or that the Broken Sound employee had any participation in the decision to engage Pyrotecnico.

In *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009), the Court stated: "Hearsay statements that would be inadmissible at trial may not be considered for purposes of

summary judgment." Taylor's deposition testimony – regarding a different Zambelli employee's statement to him about a conversation that that employee had had with a representative of Broken Sound about an alleged call from Pyrotecnico -- involves at least double hearsay, *see id.,* which would be inadmissible at trial and may not be used to defeat summary judgment. Zambelli points to no other evidence. Moreover, even if the Court were to consider the Taylor deposition testimony, the chain of proposed inferences is extremely tenuous and a reasonable jury could not conclude that a breach by Wood caused Zambelli's loss of the Broken Sound business.

    2.  Hard Rock Café

As to Hard Rock Café, Taylor testified: "The only thing I know is that Matt Wood was the primary person on that relationship, and we had a very good relationship with them. We had done a lot of work for them and then we stopped doing work for them." Taylor Deposition at 21. This statement exemplifies the flaw in Zambelli's damages theory. As the Court explained above, it is not sufficient for Zambelli to show merely that it enjoyed a good customer relationship while Wood was employed and then lost that business after he left. Rather, it is incumbent on Zambelli to demonstrate that the loss of business was attributable to specific wrongful conduct by Wood.

Taylor also testified, second-hand, about a statement which allegedly was made by Didi Martz, an employee of Hard Rock, to Jeff Rolfe, a Zambelli employee,[1] to the effect: "Oh, you're the guy who told me I wasn't supposed to talk to you until February of 2010, but we ought to go

---

[1] Rolfe is apparently no longer employed by Zambelli. No deposition testimony or affidavit/declaration from Rolfe has been submitted as part of the record in this case.

9

ahead and talk." Taylor Deposition at 25. As discussed in *Smith*, 589 F.3d at 693, this testimony is inadmissible hearsay and cannot be used to defeat summary judgment. Moreover, to the extent that it can be inferred that Wood made such a statement to Martz, it appears on its face that he was attempting to abide by the non-solicitation restrictions imposed by this Court. Taylor admits that Zambelli did not conduct any investigation to determine whether Wood was improperly participating in marketing efforts with Hard Rock Café. Taylor Deposition at 26.

        3.        Florida Marlins

Taylor testified that Jeff Rolfe told him that he (Rolfe) had seen Wood at a "demonstration" which Pyrotecnico conducted in an effort to solicit business from the Florida Marlins baseball team. Taylor Deposition at 27. Wood testified that he attended merely as an observer to see uniquely-sized shells detonated at a higher altitude and that he specifically avoided contact with the Marlins. It appears that Rolfe also observed this demonstration and that such observations are common in the industry. Taylor Deposition at 29. Zambelli has not introduced any evidence of actual contacts between Wood and the Marlins. Taylor assumes that Wood's employment by Pyrotecnico is "a contributing factor [to the loss of business], but I don't have any further belief beyond that." Taylor Deposition at 31.

It was perhaps poor judgment for Wood to attend this demonstration at the site of one of his former Zambelli customers. Nevertheless, there is no evidence of an actual breach of Wood's restrictive covenants. The Court again notes that Taylor's testimony about information he obtained through conversations with Rolfe is inadmissible hearsay.

4. City of West Palm Beach

Taylor testified that Zambelli had performed the Fourth of July show for the City of West Palm Beach for several years and that Wood was the primary customer contact. After Wood left Zambelli, Taylor believes that Pyrotecnico won the public bid for this show. Taylor Deposition at 36-38. There is no evidence that Wood participated in any way in the bid for this show. When asked to identify the evidence to relate the loss of the West Palm Beach business to Wood, Taylor answered: "No other evidence than [Wood] maintained a strong relationship with them and we had a strong relationship with them prior to [Wood's] departure." Taylor Deposition at 39.

Taylor explained that he thinks there is a "pattern" that Zambelli has lost business on which Wood was a primary customer contact, which "seems to imply that there was some advantage taken there." Taylor Deposition at 40. This damages theory is not cognizable. Zambelli cannot establish a cause of action based merely on its loss of Wood's services. As the Court has explained, the alleged "pattern" is not sufficient to establish that Zambelli suffered damages as a result of wrongful conduct by Wood. There is simply no evidence that Wood acted wrongfully in connection with the West Palm Beach bid. Zambelli has simply presented Taylor's unsupported allegations, conjectures and suspicions.

In summary, Zambelli has failed to adequately demonstrate a causal connection between its alleged damages and a breach by Wood of an enforceable provision of the 2005 Employment Agreement (Count I), a misappropriation of trade secrets (Count II), a breach of his fiduciary duty of loyalty (Count III), interference with prospective economic advantages (Count V), unfair

competition (Count VI) or civil conspiracy (Count VII).[2] The Court noted at the preliminary injunction stage of this litigation that Zambelli had failed to establish any of these theories due to a dearth of evidence, *see* Conclusion of Law 21, and Taylor confirmed in his deposition that Zambelli does not have additional evidence, other than the four customers circumstances discussed above. *See* Taylor Deposition at 51-52, 55, 57, 58, 68, 72, 77. Zambelli has failed to introduce sufficient admissible evidence to enable a reasonable factfinder to determine that its loss of business was due to wrongful conduct by Wood, as opposed to the mere loss of his services or other competitive factors. Accordingly, the Court concludes that Wood is entitled to summary judgment on Counts I-III and V-VII of the Complaint.

B.   Whether Zambelli May Recover Attorneys Fees

The dispute as to whether Zambelli may recover in excess of $400,000 in attorney fees is a closer call. The 2005 Employment Agreement states (emphasis added):

> If it is **necessary** for Zambelli to file legal proceedings **to enforce the terms** of this Agreement and Zambelli **prevails**, Matthew Wood agrees to pay **all** legal fees, court costs and expenses incurred by Zambelli in such proceedings.

Zambelli contends that it has "prevailed" in this case and therefore, under the plain text of the 2005 Employment Agreement, it is entitled to recover "all" of its legal fees. Wood contends that he should not be liable for any attorney fees because he was justified in defending the lawsuit. More specifically, Wood argues that the attorney fees provision is unenforceable because: (1) it was not "necessary" for Zambelli to file this lawsuit as it could have obtained the relief through amicable settlement of the dispute; (2) Zambelli has not "prevailed"; and (3) that

---

[2]Count IV of the Complaint was asserted only against Pyrotecnico.

12

Zambelli did not "enforce the terms" of the Agreement because it was "blue penciled" by the Court.

Contractual fee-shifting clauses are fundamentally different from statutory fee-shifting provisions. *See generally* Kevin P. Allen, <u>Contractual Fee-Shifting Clauses – How to Determine "Prevailing Party" Status</u>, 74 Pa. B.A.Q. 178 (October, 2003) (statutory fee provisions are designed to encourage litigation while contractual fee-shifting clauses are intended to discourage litigation). In *Boro Const., Inc. v. Ridley School Dist.*, 992 A.2d 208 (Pa. Commw. 2010), the Pennsylvania Commonwealth Court recently outlined the general principles of law which govern the interpretation of contractual "attorney fee" provisions under Pennsylvania law:

> "[T]he general rule within this Commonwealth is that each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct." This so-called "American Rule" holds true "unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *McMullen v. Kutz*, 603 Pa. 602, 612, 985 A.2d 769, 775 (2009) (citations omitted). The burden of proving entitlement to attorney fees is on the party claiming such entitlement. *Department of Transportation v. Smith*, 145 Pa.Cmwlth. 164, 602 A.2d 499, petition for allowance of appeal denied, 531 Pa. 657, 613 A.2d 561 (1992). In addition, where, as here, the fee-shifting provisions are contained in a contract, an appellate court will construe the contractual provisions in accordance with their plain and ordinary meaning. *Profit Wize Marketing v. Wiest*, 812 A.2d 1270 (Pa.Super. 2002).

*Id.* at 220. Thus, to overcome the general "American Rule," Zambelli has the burden to prove a "clear agreement" by the parties to the contrary.

In *Boro Construction*, the School District argued that it was entitled to attorney fees because the contractor had filed a claim and had not prevailed on it. This argument closely tracked the seemingly clear language of the parties' contract. However, the Court rejected this argument and reasoned that the School District could not recover counsel fees because the

contractor had successfully defended against the School District's counterclaim. The lesson of *Boro Construction* is that contractual fee-shifting provisions are construed narrowly by the Pennsylvania courts.

In theory, there is a third alternative to the "all" or "nothing" positions being advocated by the parties – namely, that the Court could "blue pencil" the attorney fee provision, as it did with the substantive aspects of the restrictive covenants. Pennsylvania courts have long held that where a restrictive covenant is found to be overbroad and yet the employer is clearly entitled to some measure of protection from the acts of his former employee, the Court may grant such protection by reforming the restrictive covenant and enforcing it as reformed. *Thermo-Guard, Inc. v. Cochran*, 596 A.2d 188, 194 n.9 (Pa. Super. 1991); *see also Sidco Paper Co. v. Aaron*, 351 A.2d 250, 254-55 (Pa. 1976). However, it does not appear that modification of an attorney fees provision is available under Pennsylvania law. In *Profit Wize Marketing v. Wiest*, 812 A.2d 1270 (Pa.Super. 2002), the Court specifically rejected the option of "blue penciling" the attorney fees provision and stated: "Additionally, we are not willing, nor are we permitted, to fashion an equitable remedy in the instant case because [the Employer] 'partially prevailed.' Although the lower court attempted to craft such a remedy, the language of the contract does not so provide." *Id.* at 1275 n. 3.

Although the Court may not "blue pencil" the fee-shifting clause, it may conduct a "reasonableness" inquiry. The 2005 Employment Agreement, on its face, entitles Zambelli to recover "all" counsel fees. In *McMullen*, 985 A.2d at 776-77, the Pennsylvania Supreme Court rejected this literal reading "because the potential for abuse is too high." Thus, "[t]he trial court may consider whether the fees claimed to have been incurred are reasonable, and [] reduce the

14

fees claimed if appropriate," even if no "reasonableness" language is contained in the text of the agreement. *Id.* There were two vigorous dissents in *McMullen* which discussed the underlying policy tensions,[3] opined that courts should be hesitant to override bargained-for, arms-length, freely-entered contractual fee-shifting provisions, and identified a number of methodological questions about how this "reasonableness" inquiry should proceed. *Id.* at 782.

With this background, the Court turns now to whether Zambelli has met its burden to demonstrate a "clear" agreement for it to recover attorney fees under the facts and circumstances of this case. The 2005 Employment Agreement certainly evidences a general intent to shift fees. On the other hand, the "attorney fees" provision could have been made much more precise.[4] The provision uses the generic term "prevails" rather than a more descriptive term such as "prevails in part," "substantially prevails," or "succeeds in enforcing the restrictive covenants in any way, even if modified by the Court." Importantly, the 2005 Employment Agreement is silent with respect to Zambelli's right to recover fees where both parties have won on some issues and lost on others. The Agreement does provide that if the Court determines that the restrictive covenants are unreasonable, the remedy shall be modification rather than voiding the contract. However, the "modification" clause is in ¶ 7 and relates to the scope of the restrictive covenants. It is not

---

[3]In essence, courts generally uphold individuals' freedom to contract, but are reluctant to shift costs to a party that has no control over the amount accrued.

[4]*Compare, e.g.*, the clause at issue in *Pace Constr. Mgrs, Inc. v. Muncy School Dist.*, 911 A.2d 585 (Pa. Commw. 2006): "To the extent the Contractor pursues a claim or litigation against the Owner and the Owner prevails, partially or completely, on any or all of its own claims or defenses to the Contractor's claims, leaving the Contractor with less than 100 percent recovery, the Contractor will be liable for any and all attorneys' fees, professional fees, costs or expenses of the Owner, as well as the true cost [of] any of the Owner's employee's time, associated with analyzing any claim, pursuing litigation or defending the claim or litigation."

determinative of the parties' intent as to the separate fee-shifting provision in ¶ 9 of the 2005 Employment Agreement.

In light of the lack of clarity on the face of the 2005 Employment Agreement, it is instructive to consider how the Pennsylvania courts have interpreted similar contractual language. In *Profit Wize*, 812 A.2d at 1270, the Pennsylvania Superior Court reversed the award of attorney fees in a closely analogous case in which a sales representative had resigned and joined a competitor.[5] The clause at issue in the employment contract read: "Employee further agrees that if Employer prevails in any suit or action under this Agreement, Employee shall reimburse Employer for its expenses incurred in connection with such suit or action, including without limitation, its attorney's fees and costs." The term "prevails" was not defined. During a hearing on a motion for preliminary injunction, the parties reached a settlement and stipulated to the entry of a permanent injunction which reduced the length and scope of the restrictive covenants contained in the employment contract. The trial court awarded counsel fees. On appeal, the Superior Court explained that because the parties had failed to define the term "prevails" in the contract, the Court would use the plain, ordinary meaning, i.e., "to gain ascendancy through strength or superiority" or to "triumph" or "win." The Court further explained that a "prevailing party" is a party "in whose favor a judgment is rendered" regardless of the amount of damages awarded. It explained that the term encompasses situations in which a party receives less relief than it sought, but is limited to circumstances in which a winner is

---

[5]Although Wood cited *Profit Wize* in its brief, Zambelli has not attempted to distinguish the case. Indeed, Zambelli has cited only a single authority as to the interpretation of the term "prevail," *Hensley v. Eckerhart*, 461 U.S. 424 (1983), which is distinguishable insofar as it is not based on Pennsylvania law and involved a statutory fee award.

16

declared "and the court enters judgment in that party's favor." *Id.* at 1275-76.

The *Profit Wize* Court held that the employer had not "prevailed" in that case because the settlement and entry of a permanent injunction represented a compromise in which neither party had emerged as "the clear-cut winner." *Id.* at 1275. The Pennsylvania Supreme Court has not specifically addressed the interpretation of the term "prevail" in a contractual fee-shifting clause. However, in *McMullen*, 985 A.2d at 774-75, the Pennsylvania Supreme Court discussed *Profit Wize* with implicit approval. The Court notes that *Profit Wize* was decided in 2002, several years prior to the execution of the 2005 Employment Agreement between Zambelli and Wood.

It is true that in this case, unlike *Profit Wize*, no settlement was reached and the Court granted (in part) Zambelli's motion for a preliminary injunction, which was upheld (in part) on appeal.[6] However, that relief represented a middle ground. The Court held that Wood breached the 2005 Employment Agreement and that Zambelli was entitled to enforce it. On the other hand, the Court held that Wood was entitled to resign from his position at Zambelli and to accept a job at Pyrotecnico. The Court also concluded that the restrictive covenants in the 2005 Employment Agreement were overbroad. Wood and Pyrotecnico had voluntarily implemented most of the restrictive covenants that were "blue penciled" by the Court. In sum, as in *Profit Wize*, there was no "clear cut winner" in this case. *Accord Paradise v. Midwest Asphalt Coatings, Inc.*, 316 S.W.3d 327 (Mo. Ct. App. 2010) (employer did not "prevail" because Court enforced its discretionary modification rather than the agreement the parties signed).

Moreover, it is well-established that success at the preliminary injunction stage does not

---

[6]Zambelli certainly did not "prevail" against Pyrotecnico under any definition of the term, as Pyrotecnico was dismissed from the case by the Court of Appeals.

constitute a final victory in the case and that findings of fact and conclusions of law at the preliminary injunction stage are not binding at a trial on the merits. *See, e.g., University of Texas v. Camenisch*, 451 U.S. 390, 395 (1997). Thus, Zambelli cannot claim to have "prevailed" on the basis of the preliminary injunction. No judgment has been entered in Zambelli's favor in this case. Further, as explained above, Wood's motion for summary judgment on all the other claims will be granted. Therefore, the Court concludes that Zambelli has not "prevailed" in this litigation, as that term has been interpreted under Pennsylvania law, and therefore is not entitled to recover attorney fees under the 2005 Employment Agreement.

In accordance with the foregoing, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REQUESTING ATTORNEYS' FEES AND COSTS (Document No. 76) will be **DENIED** and DEFENDANT MATTHEW WOOD'S MOTION FOR SUMMARY JUDGMENT (Document No. 81) will be **GRANTED**.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZAMBELLI FIREWORKS MANUFACTURING CO., INC. doing business as ZAMBELLI FIREWORKS INTERNATIONALE, | ) ) ) ) ) | 2:08-cv-415 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MATTHEW WOOD, Defendant. | ) ) | |

## ORDER OF COURT

AND NOW this 9th day of November, 2010, in accordance with the foregoing Memorandum Opinion, it is ORDERED, ADJUDGED and DECREED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REQUESTING ATTORNEYS' FEES AND COSTS (Document No. 76) is **DENIED** and DEFENDANT MATTHEW WOOD'S MOTION FOR SUMMARY JUDGMENT (Document No. 81) is **GRANTED** as to Counts I-III and V-VII of the Complaint. The clerk shall docket this case closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:
ZAMBELLI FIREWORKS MANUFACTURING CO.
    Mark A. Willard, Esquire
    Email: mwillard@eckertseamans.com

    Ryan J. Siciliano, Esquire
    Email: rsiciliano@eckertseamans.com

MATTHEW WOOD
    David G. Oberdick, Esquire
    Email: dgo@muslaw.com
    Jane Lewis Volk, Esquire
    Email: jlv@muslaw.com
    Mary C. McGinley, Esquire
    Email: mcm@muslaw.com